## SHIELDS *v.* OHIO.

1. The consolidation, pursuant to the statute of Ohio of April 10, 1856 (4 Curwen, 2791), of two or more railway companies works their dissolution. All the powers and franchises of the new company which is thereby formed are derived from that statute, and are subject to "be altered, revoked, or repealed by the General Assembly," under sect. 2, art. 1, of the Constitution of that State, which took effect Sept. 1, 1851.
2. The General Assembly does not, therefore, impair the obligation of a contract by prescribing the rates for the transportation of passengers by the new company, although one of the original companies was, prior to the adoption of that Constitution, organized under a charter which imposed no limitation as to such rates.

ERROR to the Supreme Court of the State of Ohio.

The facts are stated in the opinion of the court.

The case was argued by *Mr. James Mason* for the plaintiff in error, and by *Mr. Samuel Shellabarger* for the defendant in error.

MR. JUSTICE SWAYNE delivered the opinion of the court.

The plaintiff in error was the conductor of a train of cars upon the Lake Shore and Michigan Southern Railway, between Elyria and Cleveland. Ulrich was a passenger, intending to

go from the former to the latter place. The intermediate distance was twenty-five miles. The fare fixed by the company was ninety cents. Ulrich offered to pay seventy-five cents, which was at the rate of three cents per mile, and refused to pay more. The conductor ejected him from the train, and was thereupon indicted in the proper local court for assault and battery. The court instructed the jury that Ulrich had tendered the proper sum, and that Shields had no legal right to demand more. The case turned upon this point. It was not claimed that the defendant was guilty, if Ulrich was in the wrong. A verdict and judgment were given against Shields. The case was removed by a writ of error to the Supreme Court of the State. The judgment of the court below was affirmed. Shields sued out this writ of error, and brought the case here for review. The only question presented for our determination is his legal right to demand more than Ulrich offered to pay.

A brief chronological statement with respect to the provisions of the Constitution, and those of the laws of the State bearing upon the subject, is necessary to a clear presentation of the point to be decided.

1. An act passed March 2, 1846, incorporated the Junction Railroad Company, and authorized it to build a railroad from Cleveland to Elyria, and thence west. The eleventh section empowered the company to charge such tolls for the transportation of freight and passengers as it might deem "reasonable." The twenty-second section declared that after the lapse of ten years from the completion of the road the State might reduce the tolls "should they be unreasonably high," and might "exercise the same power at intervals of every ten years thereafter." It was upon the road built under this act that the present controversy arose.

2. The act of March 7, 1850, incorporated the Toledo, Norwalk, and Cleveland Company, and the charter was amended by an act of Jan. 20, 1851.

The twelfth section of the latter act declared that, in case the Junction Company should become consolidated with the Toledo, Norwalk, and Cleveland Company, the consolidated company might assume the name of the Cleveland and Toledo

Railroad Company, and in that event should be governed by sects. 9, 10, 11, 15, and 17 of the act incorporating the Junction Company, and in other respects by the act incorporating the Toledo, Norwalk, and Cleveland Company, and the acts amendatory thereof. The twenty-second section of the act first named, which allowed the State, after the lapse of ten years, to regulate the tolls of the Junction Company in the event specified, is not one of the sections enumerated.

3. The act of March 3, 1851, was a general act, authorizing the consolidation of railroad companies coming within its provisions. The process was prescribed with great fulness of details. Sect. 3 declared: "And such new corporation shall possess all the powers, rights, and franchises conferred upon such two or more corporations by the several acts incorporating the same, or relating thereto respectively, and shall be subject to all the duties imposed by such acts, so far as the same may be consistent with the provisions of this act.".

4. The Constitution of Ohio of 1851 took effect on the 1st of September in that year. It declared that "no special privileges shall ever be granted that may not be altered, revoked, or repealed by the General Assembly." Art. 1, sect. 2. "The General Assembly shall pass no special act conferring corporate powers." Art. 13, sect. 1. "Corporations may be formed under general laws, but such general laws may from time to time be altered or repealed." Art. 13, sect. 2.

5. On the 15th of June, 1853, the Junction Company became consolidated with the Toledo, Norwalk, and Cleveland Company, pursuant to the provisions before mentioned of the acts of Jan. 20, 1851, and March 3, 1851.

6. The act of April 10, 1856, 4 Curwen, 2791, authorizes railroad companies of Ohio to consolidate with such companies of other States. The third section declares that such consolidated companies respectively "shall be deemed and taken to be one corporation, possessing within the State all the rights, privileges, and franchises, and subject to all the restrictions, liabilities, and duties, of such corporations of this State so consolidated." It was provided that the old stock should be extinguished, that a board of directors of the consolidated company should be elected, and that new stock should be cre-

ated and issued to the parties entitled to it. Those refusing to receive it were to be paid the highest market price for their old stock.

The seventh section enacts "that suits may be brought and maintained against such new corporation in the courts of this State for all causes of action, in the same manner as against other railroad companies of this State."

7. On the 11th of February, 1869, by an agreement of that date, the Cleveland and Toledo and the Lake Shore *Railroad* Company became consolidated under the name of the Lake Shore *Railway* Company.

On the 6th of April, 1869, the Lake Shore and the Michigan Southern and Northern Indiana Railroad Companies were duly consolidated under the name of the Lake Shore and Michigan Southern Railway Company.

Shields, the plaintiff in error, was an employé of this company when he ejected Ulrich.

8. The act of April 25, 1873, provides that "any corporation operating a railroad in whole or in part in this State may demand and receive for the transportation of passengers over said road not exceeding three cents per mile for a distance of more than eight miles."

The defendant in error insists that the power of the company in the case in hand was fixed and limited by this act. The plaintiff in error denies this, and maintains that the eleventh section of the first-named act of 1846 is the governing authority.

In support of this view, it is further maintained that this section was a contract, and that it was simply transferred to each successive consolidated corporation, including, finally, the Lake Shore and Michigan Southern Railway Company, and that at the time of the occurrence here in question it was in full force.

This renders it necessary to consider the legal *status* and character of the new corporation. In the present state of the law, a few remarks upon the subject will be sufficient.

The legislature had provided for the consolidation. In each case, before it took place, the original companies existed and were independent of each other. It could not occur without

their consent. The consolidated company had then no existence. It could have none while the original corporations subsisted. All — the old and the new — could not coexist. It was a condition precedent to the existence of the new corporation that the old ones should first surrender their vitality and submit to dissolution. That being done, *eo instanti* the new corporation came into existence. But the franchise alone to be a corporation would have been unavailing for the purposes in view.

There is a material difference between such an artificial creation and a natural person. The latter can do any thing not forbidden by law. The former can do only what is authorized by its charter. *Railroad Company* v. *Harris*, 12 Wall. 65. It was, therefore, indispensable that other powers and franchises should be given. This was carefully provided for. The new organization took the powers and faculties designated in advance in the acts authorizing the consolidation, — no more and no less. It did not acquire any thing by mere transmission. It took every thing by creation and grant. The language was brief, and it was made operative by reference. But this did not affect the legal result. A deed *inter partes* may be made as effectual by referring to a description elsewhere as by reciting it in full in the present instrument. The consequence is the same in both cases.

If the argument of the learned counsel for the plaintiff in error be correct, the constitutional restrictions can be readily evaded. Laws may be passed at any time, enacting that all the valuable franchises of designated corporations antedating the Constitution shall, upon their dissolution, voluntary or otherwise, pass to and vest in certain newly created institutions of the like kind. The claim of the inviolability of such franchises would rest on the same foundation as the affirmation in the present case. The language of the Constitution is broad and clear, and forbids a construction which would permit such a result.

When the consolidation was completed, the old corporations were destroyed, a new one was created, and its powers were "granted" to it, in all respects, in the view of the law, as if the old companies had never existed, and neither of them had

ever enjoyed the franchises so conferred. The same legislative will created and endowed the new corporation. It did one as much as the other. In this respect, there is no ground for any distinction.

These views are sustained by several well-considered cases exactly in point. One of them embodies the unanimous judgment of this court. *Clearwater* v. *Meredith*, 1 Wall. 25 ; *Mc-Mahan* v. *Morrison*, 16 Ind. 172; *The State of Ohio* v. *Sherman*, 22 Ohio St. 411 ; *Shields* v. *The State of Ohio*, 26 id. 86.

The constitutional provision that " no special privileges or immunities shall ever be granted that may not be altered, revoked, or repealed by the General Assembly," entered into the acts under which the consolidations were made, and rendered the corporations created and the franchises conferred subject to repeal and alteration, just as if they had been expressly declared to be so by the act. · The act of 1873, in the particular in question, was a legitimate exercise of the reserved power of alteration, and was, therefore, valid. *Parker* v. *The Metropolitan Railroad Co.*, 109 Mass. 506.

Another branch of the argument of the counsel for the plaintiff in error calls for some further remarks.

It is urged that the franchise here in question was property, held by a vested right, and that its sanctity, as such, could not be thus invaded. The answer is *consensus facit jus.* .It was according to the agreement of the parties. The company took the franchise subject expressly to the power of alteration or repeal by the General Assembly. There is, therefore, no ground for just complaint against the State.

Where an act of incorporation is repealed, few questions of difficulty can arise. Equity takes charge of all the property and effects which survive the dissolution, and administers them as a trust fund, primarily for the benefit of the creditors. If any thing is left, it goes to the stockholders. Even the executory contracts of the defunct corporation are not extinguished. *Curran* v. *State of Arkansas*, 15 How. 304.

The power of alteration and amendment is not without limit. The alterations must be reasonable ; they must be made in good faith, and be consistent with the scope and object of the act of incorporation. Sheer oppression and wrong cannot be

inflicted under the guise of amendment or alteration. Beyond the sphere of the reserved powers, the vested rights of property of corporations, in such cases, are surrounded by the same sanctions and are as inviolable as in other cases. Two authoritative adjudications throw a strong light from opposite directions upon this subject. We cite them only for the purpose of illustration. In *Miller* v. *N. Y. & E. Railroad Co.*, 21 Barb. (N. Y.) 513, the legislature, under the reserved power of alteration, required the company which had been previously incorporated to construct a highway across their road. The work was expensive, and of no benefit to the company. The act imposing the burden was held to be void.

In *Mayor & Aldermen of Worcester* v. *Norwich & Worcester R. R. Co. and Others*, 109 Mass. 103, the legislature had passed an act requiring the railroad companies therein named to unite in a passenger station in the city of Worcester (the place to be fixed as provided), to extend their tracks in the city to the Union station, and, after the extension, to discontinue parts of their existing locations. The act was held to be constitutional and valid, being a reasonable exercise of the right reserved to the legislature to amend, alter, or repeal the charters of those companies. See also *The Commonwealth* v. *Essex Company*, 13 Gray (Mass.), 239, and *Crease* v. *Babcock*, 23 Pick. (Mass.) 334.

It is unnecessary to pursue the subject further in this case.

*Judgment affirmed.*


MR. JUSTICE FIELD and MR. JUSTICE STRONG dissented.


MR. JUSTICE STRONG. I dissent from the judgment in this case.

I agree that, by the consolidation effected under the statutes, a new corporation was created, with the powers and restrictions of the constituent corporations. I agree, therefore, that the legislature reserved the power to repeal, alter, or amend the charter. But I deny that under this reserved power it was competent for the legislature to take away the right given to the company to charge such freight and tolls as the directors might deem reasonable, while at the same time continuing the

company in existence, subject to all the duties imposed upon it. Such an alteration is taking away the property of the company without compensation, as much as would be taking away its.lands.

MR. CHIEF JUSTICE WAITE did not sit in this case, nor take any part in deciding it.