Okey, C. J.
The claim is urged that when Wentz purchased the ticket at Bucyrus, and also when he retained his seat in the limited mail at Crestline, he knew that train did not stop at Bucyrus ; and hence, that in making the agreement the parties were in pari delicto, and that in retaining his seat at Crestline, Wentz was guilty of negligence, either of which facts should defeat a recovery. But we need not determine how far such knowledge should affect a recovery. It is sufficient to say the court charged the jury that such knowledge, if he had it, would defeat Wentz’s action, and that the jury found in his favor. This, therefore, was in effect a finding of the jury that he did not have such knowledge; and, after a careful examination of the evidence, we cannot say such finding was clearly wrong.
A further claim is made, that there was a special contract between Wentz and the company. No doubt a special agreement between the parties that Wentz should only use the ticket he purchased at Bucyrus upon a particular train would have been valid, whether made before or after the passage of the act of 1867. But no such agreement was proved. Nobody testified to anything of the sort. Indeed, there was no evidence whatever that any conversation concerning any special agreement between the parties was ever held. The only facts to show such agreement were the words on the ticket, the printed timetable posted in the offices of the company, showing that the limited mail did not stop at Bucyrus, and the residence of Wentz in the neighborhood of Bucyrus for several years. But *337 it is perfectly well settled that these facts do not prove any special agreement. Railroad Co. v. Campbell, 36 Ohio St. 647. Indeed, there is no evidence that the attention of Wentz was ever directed to the words on the ticket or the time-table, or that he ever saw such table.
Conceding, however, the claim of the company that when Wentz purchased the ticket at Bucyrus, he assented to the conditions appearing thereon, the question remains whether, even then, his right of action is defeated, the jury having found, as already stated, that he did not know, when he presented the ticket, that the limited mail did not stop at Bucyrus. The place at which he was ejected was not at a station, nor at any habitation, but in or near woodland, and the time was one o’clock at night. The sole ground of ejection was that he would not consent to be carried twenty-eight miles beyond the station named on his ticket. Even laying out of view the statute, it would be difficult to maintain the proposition that such ejection was justifiable. Thompson’s Car. of Pas. 340.
But Hie right to recover may be placed on broader ground. The stipulation on the ticket was, as Ave have seen, that the holder would not use it on trains which did not regularly stop at Bucyrus. In the absence of statutory provision to the contrary, a railroad company may adopt a regulation that a certain train or trains of passenger cars running regularly on its road, shall not stop at designated stations or places, and one traveling as a passenger on such road is bound to inquire whether the train upon which he takes passage stops at the station or place to which he is going. Pittsburgh, &c. R. Co. v. Nuzum, 50 Ind. 141; Ohio, &c. R. Co. v. Applewhite, 52 Ind. 540 ; Ohio, &c. R. Co. v. Swarthout, 67 Ind. 567 ; Chicago, &c. R. Co. v. Randolph, 53 Ind. 510. And, in the absence of such ^statutory provision, where the conductor of a road which has made such regulation, finds, after the train has started, a passenger who holds a ticket for a station at which that train does not stop, and the passenger is mrwilling to ride to a station at which such train does stop, he may, in a proper manner, be removed from such train. Thompson’s Car. of Pas. 375. But *338 tlie power of a railroad company to adopt ox- enforce such regulation is subject to legislative contx-ol. Com. v. Eastern R. Co., 103 Mass. 254; Shields v. The State, 26 Ohio St. 86; s. c., 95 U. S. 319; State v. New Haven, &c. Co., 43 Conn. 351; New Haven, &c. Co. v. State, 44 Conn. 376; Pierce on Rail, (ed. of 1881) 460; Const. Art. 13, § 2.
The act of 1867, set fox-th in the statement of this case, is such legislative control. While it is clear that this action was not prosecuted under that section, it is equally clear that the alleged contract, whereby Wentz purchased a ticket from Bucyrus to Crestline and return, must be construed with reference to such section. Lindemann v. Ingham, 36 Ohio St. 1, 10. This is an action for the alleged wx-ong done to Wentz, and it is not material whether it should be regarded as in tort •or on contract, for in either case the question is whether he had a right to x-etain his seat on production of his ticket. Sometimes it is difficult to determine whether a matter is so far illegal that it cannot be the subject of an agx-eement. But in this case the provision is express, that all passenger trains shall stop on arrival at a municipal corporation having a population of three thousand; this is a • statxxtory regulation for the benefit of the public; and, moreovei-, a penalty is provided for a failure to comply with the requirement. An agreement— assuming that one was made—x-ecognizing the validity of a l-egulation to disregard such statutory provision, is, according to the authorities, clearly illegal. Spurgeon v. McElwain, 6 Ohio, 442; State v. Findley, 10 Ohio, 51; Bloom v. Richards, 2 Ohio St. 287; Huber v. Ger. Con., 16 Ohio St. 371; Delaware Co. v. Andrews, 18 Ohio St. 49; Hooker v. De Palos, 28 Ohio St. 251; Leake on Con. 723.
The pux-ehase of the ticket, authorizing Wentz to ti-avel on passenger trains of the company from Bucyrus to Crestline and return, was manifestly lawful, and that purchase was fully executed when Wentz paid the money and received the ticket as ids voucher .that such fare was paid. It is tx-ue that the ticket contained a stipulation that the purchaser thereof “ agrees to use it only on such trains as regularly stop at both stations named,” that .is, Bucyrus and Crestline. But as the law re *339 quired all passenger trains to stop at Bucyrus, and as the train upon which he was riding was a passenger train, he might well and properly assume that the law would be obeyed. Moreover, such limitation on the use of the ticket, being in violation of the statute, should be disregarded, while the payment of fare for a passage from Bucyrus to Crestline and return should be held to create an obligation on the part of the company to perform such service for Wentz on any passenger train of the company. This is in accordance with Pigot's ease, 11 Coke, 27 b, in which it was resolved, “ that if some of the covenants of an indenture, or of the conditions indorsed upon a bond, are against law, and some good and lawful, that in this case, the covenants or conditions which are against law are void ab initio, and the others stand good.” This principle has been reasserted in many cases. The whole subject is ably considered in Wald’s Pollock on Con. ch. VI.
If there was any error in the rulings in the court of common pleas, it was not to the prejudice of the plaintiff in error. In any view that can be taken of the case, the judgment below is
right. Judgment affirmed.