AUSTIN T. MINER, APPELLANT, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, RESPONDENT.

*Estate of a railroad company in lands appropriated for its use — the right to use them may extend beyond the prescribed term of its corporate existence — it may be, by legislative act, transferred to a successor.*

The estate acquired by the Tonawanda Railroad Company in lands appropriated to its use, as provided in the act incorporating it (chap. 241 of 1832), was a right to use the same, for the purposes of the railroad, for a period limited only by the time during which the defined public use should continue, and to terminate only when it ceased, although such period might extend beyond the prescribed term of the corporate existence of the company; and such right and interest were such that they might, by legislative assent, be transferred to a successor to continue the like use.

The estate which the Tonawanda Railroad Company acquired in the lands appropriated to its use, under the provisions of the act incorporating it, has, by virtue of the provisions contained in chapter 236 of 1850, chapter 76 of 1853 and chapter 917 of 1869, passed to the New York Central and Hudson River Railroad Company, and the public use for which it was taken is, by the said acts, still continued.

APPEAL from a judgment dismissing the complaint, entered upon decision rendered by the court on a trial without jury, at the Genesee Circuit.

*L. N. Bangs*, for the appellant.

*George C. Greene*, for the respondent.

BRADLEY, J.:

The action is ejectment, brought to recover the possession of land occupied by the defendant and used as part of its railroad in the county of Genesee, and of that portion originally taken and used by the Tonawanda Railroad Company, which was created by the Laws of 1832, chapter 241.

The act provided that the company should continue to be a body corporate for the term of fifty years; that it should have the right to construct and during its existence to maintain and continue a railroad from the village of Rochester to Attica; that in case the corporation should not be able to acquire the title to the lands

through which the railroad should be laid, by purchase or voluntary cession, it should be lawful for it to appropriate so much of such lands as might be necessary, to its own use for the purposes contemplated by the act, in the manner provided; that the damages were to be assessed by appraisers appointed by the vice-chancellor of the eighth circuit; that the appraisers should assess the damages which each individual owner would sustain by the "appropriation of his land for the use or accommodation of such railroad or its appendages," and in assessing such damages the appraisers should take into the account the benefit which would accrue to such owner by means of the passage of the railroad through his lands: that on payment of the damages, etc., the corporation should "immediately become entitled to the use of the said lands for the purposes aforesaid;" that if the legislature should, at the expiration of ten, and within fifteen years, reimburse the company, etc., the "railroad, with all fixtures and appurtenances, shall vest in and become the property of the people of this State," and that the legislature might "at any time alter, modify or repeal" the act. The land in question was appropriated by proceedings *in invitum* under the act, and the railroad was constructed and operated by the company. And afterwards, pursuant to the provisions of chapter 236 of Laws of 1850, authorizing it, the Tonawanda Railroad Company and the Attica and Buffalo Railroad Company, were consolidated or amalgamated into a single corporation, known as the Buffalo and Rochester Railroad Company. And pursuant to chapter 76, Laws of 1853, this and other companies were consolidated into a single corporation, which took the name of The New York Central Railroad Company. And in September, 1869, this company and the Hudson River Railroad Company were consolidated into one corporation, having the corporate name of the New York Central and Hudson River Railroad Company, pursuant to chapter 917, Laws of 1869, and the latter company has, since that time, operated the railroad embracing that portion upon the land in question. The act under which the first consolidation was had, provided that all and singular, the rights and interests of the two corporations in and to every species of property, shall be deemed to be transferred to and vested in the new corporation; and that it should hold and enjoy the same together with the right of way and all other rights of property, in

the same manner and to the same extent as if the two corporations had continued to retain the title and transact the business of the corporations; and that the title and real estate acquired by either of them shall not be deemed to revert or be impaired by means of anything contained in the act. (Laws 1850, chap. 236, § 4.) And such were substantially the provisions and effect of the statutes under which the two following consolidations referred to were had.

The question presented relates to the estate in the land appropriated by the Tonawanda Company by the proceedings under the act of its incorporation. Its power to exercise the right of eminent domain, was that only which was delegated to it by the State through the statute, which we assume did not permit the taking of the fee, but authorized the appropriation of the use merely. (*Heard* v. *Brooklyn*, 60 N. Y., 242; *Strong* v. *Brooklyn*, 68 id., 1.) The claim of the plaintiff rests upon the proposition that the estate which the company was permitted to take was limited to fifty years use from the time of its creation, because that was the time designated for its corporate continuance.

It must be conceded that the use provided for was limited by the statute to the purposes of a railroad, and that if the use for which authority was given to appropriate the land to such purpose was limited, by the statute delegating the power, to any definite term, it cannot lawfully be held, by force of such appropriation, for a greater than such period of time. The estate which may be so taken for public use, cannot be enlarged without compensation to the owner, so that if the use which the company had authority to take through the power delegated to it, was an estate for fifty years only, the legislature was powerless to enlarge it or to vest in the company any power to appropriate for its use any greater estate without additional compensation. (Const,, art. 1, § 6.) The right reserved to alter, amend or modify the charter of a corporation created for public purposes, bears upon its relation to the State, and does not embrace the power to impair the obligations arising out of contract relations in respect to property, or rights of property, between the corporation and individuals, to the prejudice of the latter.

In the view thus taken, the question is one of the construction of the provisions of the charter of the Tonawanda company relating to the delegation of power to exercise the right of eminent domain.

The act does not in direct terms so limit the use as to terminate it with the fifty years following the time of the incorporation of the company, and the conclusion to that effect can result only from inference arising from the fact that the continued existence of the corporation by force of the statute is only fifty years. It was contemplated by this statute that a railroad would be constructed and operated for the public use, and it was for that use that the sovereign power was delegated to the company to appropriate lands, and to effectuate such purpose it was in the legislative mind that the people of the State, in the interest of the public, might deem it best to take the railroad into their care and management, and in that view then to become vested with all the rights, interests and property of the company. Whether the State did this or not, the operation of the road was under the control of the State in so far that it might by legislation require the observance of regulation with a view to its utility to the public. The use in the contemplation of the statute was not necessarily dependent upon the measure of the corporate existence of the company declared by it, but, as may then have been seen, the use might be continued beyond that time by the extended corporate life of the company or by a successor in interest. The act defined the use for which the land should be taken as an appropriation " for the use or accommodation of such railroad or its appendages." This is the use—the public use—to which it must be devoted, and seems to be the only qualification of the easement, which the company was authorized to take, unless it is found in the provision that it shall be lawful for the " corporation to appropriate so much of such lands as may be necessary to its own use for the purposes contemplated by this act." This latter phrase does not define or limit the estate in the land to be appropriated, but relates to the quantity of the land to be taken for the use, and restricts it to that which should be necessary to the use of the corporation. The estate taken is defined in the provision expressing the purpose of the appropriation as before mentioned. Nor do we find limitation of the estate to the use for such term of fifty years in the provision of the act conferring upon the company the " right to construct and during its existence to maintain and continue a railroad." This was a right given, not inconsistent with the continuance of the railroad beyond that period. This reference is made to the provis-

ions of the act, to show that its provisions do not in terms limit the use appropriated pursuant to the act to any definite period of time, and with a view to the inquiry as to what was within the contemplation of the act, and fairly derivable from its provisions in respect to the subject in controversy. The only purpose for which the power delegated could be conferred was a public use, and to effectuate that purpose the land was taken and used. This use is defined and limited to this public purpose, and not to any time otherwise than by thus limiting the use. The case of *Heard* v. *Brooklyn*, and the same case *sub nom. Strong* v. *Brooklyn*, legitimately go no farther. There as here, the use was limited to a specific purpose. Such use was abandoned, and it was held for that reason that the land had reverted to the owner of the fee, and therefore the railroad company had not the power to transfer the right to appropriate it to a different use.

It must be assumed that the authority given by the act in question here was with a view to its exercise for the benefit of the public; and that for a like purpose the right was reserved to the people of the State to take and operate the railroad. Can it, by reference to the provisions of the act, fairly be said that it was contemplated that the power should be so limited by this statute, that the use and benefit resulting to the public would terminate with the period of fifty years? It appears to be more in harmony with the apparent legislative intent, and such we think is the reasonable construction of the act, that the use which authority was given to appropriate, was that requisite for the purposes of the railroad, and was limited only to that defined; and to continue so long as it should be devoted to such public purpose. The fact that the designated period of the corporate existence of the company was fifty years, did not render it incapable of taking an estate greater than one for that number of years. (*Nicoll* v. *N. Y. C. R. R. Co.*, 12 N. Y., 121.) It was capable of taking an easement for a greater than that length of term, or the fee, if that had been authorized by the act, or it could have taken it by voluntary grant. And in the view taken there was nothing in the way of its acquiring the right to the use for a period limited only by the time which the defined public use should continue, and to terminate only when it ceased, although such period might extend beyond the prescribed term of the corporate

existence of the company. And such right and interest might by legislative assent be transferred to a successor to continue the like use. That has been done. The Tonawanda company ceased to exist as a corporation when the consolidation of it with the Attica and Buffalo Railroad Company was .made, and with the latter was merged in the new company, thereby, pursuant to the statute, created, and all its property, rights and interests were vested in such new company. (*McMahan* v. *Morrison*, 16 Ind. 172; 79 Am. Dec. 418; *Shields* v. *Ohio*, 95 U. S., 319; *R. R. Co.* v. *Georgia*, 98 id., 359.) Such was the effect of the two following consolidations, by means of which, and by force of the statutory provisions pursuant to which they were accomplished, the estate which the Tonawanda Railroad Company acquired in the land in question passed to the defendant. And the public use for which it was taken is still continued.

If these views are correct, the judgment should be affirmed.

SMITH, P. J. and BARKER, J., concurred; HAIGHT, J., not sitting.

Judgment affirmed.