AUSTIN T. MINER, Appellant, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Respondent.

A possible reverter is never contemplated in the assessment of damages for lands taken by a railroad; the appropriation is regarded as permanent, and the damages are awarded on that basis.

*It seems*, it was not the legislative intent, in the passage of the act incorporating the T. R. R. Co. (Chap. 241, Laws of 1832), to limit the easements in lands acquired thereunder to the term of the corporate life specified therein, *i. e.*, fifty years, but that said easements were intended to be permanent.

Said company was, under an act passed in 1850 (Chap. 236, Laws of 1850), consolidated with another company into the B. & R. R. R. Co. In 1853 (Chap. 76, Laws of 1853), that company, with others, were consolidated into the N. Y. C. R. R. Co. In 1869, the company last named and another were consolidated into the N. Y. C. & H. R. R. R. Co., defendant herein. (Chap. 917, Laws of 1869.) By each of the various Consolidation Acts, the franchises and property rights of the companies so consolidated were transferred to and vested in the new corporation. In an action to recover possession of lands in which the said T. R. R. Co. acquired an easement under its charter, and upon which its road was constructed, *held*, that, conceding the easement so acquired was only during the corporate life of said company, as this ceased in 1850, and the land had been held and possessed from that time adversely for a period of over thirty years, under a claim of right by defendant and its predecessors, the right of action was barred by the Statute of Limitations.

Reported below, 46 Hun, 612.

(Argued June 23, 1890; decided October 7, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made at the December term, 1887, which affirmed a judgment in favor of the defendant entered upon a decision of the court on trial without a jury.

This was an action of ejectment brought to recover lands used and occupied by defendant as part of its railroad in Genesee county.

The facts, so far as material, are stated in the opinion.

*L. N. Bangs* for appellant. The Tonawanda Railroad Company, by its proceedings in the Vice Chancellor's Court,

did not acquire in the first instance a right of use in these lands for more than fifty years, the original limit of the company's chartered existence. (Cooley on Const. Lim. 539; *Beal* v. *N. Y. C. & H. R. R. R. Co.*, 41 Hun, 181; *W. Cemetery* v. *P. P. & C. I. R. R. Co.*, 68 N. Y. 591, 594; *Story* v. *City of Brooklyn*, 68 N. Y. 1; *Sweet* v. *B , N. Y. & P. R. R. Co.*, 79 id. 293–299; *S. A. R. R. Co.* v. *Kerr*, 72 id. 330, 332; 2 Morawetz on Corp. § 1003.)    The legislature, did not by chapter 236 of the Laws of 1850, or by any subsequent legislation, alter or modify the said charter so as to create a longer period of duration or chartered existence for said railroad company than the fifty years mentioned, or a use of said lands to be continued beyond said fifty years. (Const. of 1846, art. 8, § 1; 1 R. S. chap. 18, § 8; Laws of 1832, chap. 241, §§ 29, 30; Laws of 1850, chap. 236; *C. Co.* v. *M. P. R. Co.*, 115 U. S. 587; *Shields* v. *Ohio*, 95 id. 319; *R. R. Co.* v. *Maine*, 96 id. 499; *Prouty* v. *L. S. & M. S. R. Co.*, 85 N. Y. 272–277; *Boardman* v. *L. S. & M. S. R. Co.*, 84 id. 157, 181; *Zabriskie* v. *H. & N. Y. R. R. Co.*, 18 N. J. Eq. 178–192.)    The legislature, by chapter 236 of the Laws of 1850, did not alter, modify or extend, or attempt to alter, modify or extend, this acquired use in said lands, so that the same was carried beyond the fifty years mentioned in the charter of the Tonawanda Railroad Company, nor did any subsequent act of the legislature work, or attempt to work, this result. (*Shields* v. *Ohio*, 95 U. S. 319.)    Assuming that the legislature attempted to alter or modify the charter of the Tonawanda Railroad Company, and thereby extend the use of the lands in question beyond the fifty years provided in the original charter, it did not have the power to grant such extension. (*Henderson* v. *C. P. R. Co.*, 21 Fed. Rep. 358–365.; *Story* v. *N. Y. E. R. R. Co.*, 90 N. Y. 122, 172; *Tomlinson* v. *Jessup*, 15 Wall. 454, 459; *R. R. Co.* v. *Maine*, 94 U. S. 499, 511; 2 Morawetz on Corp. §§ 1096, 1101; *Comrs., etc.,* v. *H. W. P. Co.*, 104 Mass. 446; *Close* v. *G. Cemetery*, 107 U. S. 466; *H. Co.* v. *Lyman*, 15 Wall. 500–519; *B. P. Comrs.* v. *Armstrong*, 45 N. Y. 234; *Sinking Fund Cases*, 99 U. S. 700; *Miller* v. *State*, 15 Wall. 478–

498.)   All the legislature authorized was the creation of a new corporation under chapter 236, Laws of 1850, with power to the old corporation to transfer its property interests to the new, and when certain acts of the old corporations were consummated they, the original corporations, ceased to exist. (Const. art. 3, § 16; *Beal* v. *N. Y. C. & H. R. R. R. Co.*, 41 Hun, 172.) There is no presumption that any benefits were to accrue to the land owner from the building of such road, or that the commissioners to appraise the value of this use upon the facts took into account, or had the right to take into account, any such benefits. (*W. Cemetery* v. *P. P. & C. I. R. R. Co.*, 68 N. Y. 597; *Black* v. *D. & R. C. Co.*, 24 N. J. Eq. 465; *Story* v. *City of Brooklyn*, 68 N. Y. 9; *U. S.* v. *Fisher*, 2 Cranch. 202–207.) Whatever is acquired by purchase or cession the corporation may hold during its corporate life and leave as assets, or before its dissolution it may convey the same, whether it has power to hold it or not, and its grantee takes the estate as the original corporation held it, an absolute or defeasable interest as it may prove. (*People* v. *Mauran*, 5 Den. 389, 400; *T. Co.* v. *Illinois*, 96 U. S. 63, 68; *F. Co.* v. *Hyde Park*, 97 id. 666; *Bates* v. *Cooper*, 5 Ohio, 115, 120; *Moorhead* v. *L. M. R. R. Co.*, 17 id. 340, 351; *H. R. R. Co.* v. *DeCamp*, 47 N. J. L. 378; *R., N. Y. & H. R. R. Co.* v. *Kip*, 46 N. Y. 546.)

*Daniel H. McMillan* for respondent.   If, as plaintiff claims, the Tonawanda Railroad Company entered upon and held the premises by virtue of the appraisal and condemnation proceeding, then said company, its successors and assigns acquired the right to the use of the lands for the purpose of a railroad, without limit as to time; at least a perpetual easement or right to use the lands for railroad purposes was acquired. (Laws of 1832, chap. 241; *Rexford* v. *Knight*, 11 N. Y. 306–314; Laws of 1850, chap. 236, §§ 2, 4; Laws of 1853, chap. 76; Laws of 1869, chap. 917; *Nicoll* v. *N. Y. & E. R. Co.*, 12 N. Y. 121–128; 1 R. S. 748, § 1; *B. P. Comrs.* v. *Armstrong*, 45 N. Y. 242; *Strong* v. *City of*

*Brooklyn*, 68 id. 1; *Hurd* v. *City of Brooklyn*, 60 id. 242;
*Beals* v. *N. Y. C. & H. R. R. R. Co.*, 41 Hun, 172; Wood
on Railway Law, 767; Mills on Em. Domain, § 49; 2 Ia. 288;
42 Ala. 83; *B. P. L. Co.* v. *N. Y., etc., R. Co.*, 10 Abb.
[N. C.] 107, 112; *Underhill* v. *S. & W. R. Co.*, 20 Barb. 455;
25 Vt. 49–69; 2 Kent, 281; Preston on Sales, 250; 48 Vt. 81;
100 Mass. 544; 4 Ohio [N. S.], 308.)    If it is held that the
appropriation of the land was only for and during the existence
of the Tonawanda Railroad Company, then that company
ceased to exist at the time of the formation of the Buffalo
and Rochester Railroad Company, and the right of re-entry by
plaintiff or his grantors accrued at that time, October 8, 1850,
more than thirty years before the commencement of this action,
and during all that time the defendant and its grantors and
predecessors have been in possession, claiming title, and the
plaintiff has not, nor has his ancestor or predecessor or grantor,
made any claim thereto; but, on the contrary, plaintiff has
recognized defendant's title in and by deeds executed by him
referring to the lands in question as the lands of the railroad
company. (*Shields* v. *Ohio*, 95 U. S. 319–322; Boone on
Corp. § 185; *R. R. Co.* v. *Georgia*, 98 U. S. 359; Code Civ.
Pro. § 367.)    The defendant has established its rights to the
premises by adverse possession for more than twenty years.
(Code Civ. Pro. §§ 369, 371; Tyler on Eject. 907; *Sherry* v.
*Frecking*, 4 Duer, 452, 454; *Doolittle* v. *Tice*, 41 Barb.
181–183; *Swettenham* v. *Leary*, 18 Hun, 284, 286, 287;
*Humbert* v. *T. Church*, 24 Wend. 587; 4 Lans. 415; *Robie*
v. *Sedgwick*, 35 Barb. 319–329; *Bogardus* v. *T. Church*, 4
Sand. Ch. 633; *Miller* v. *Garlock*, 8 Barb. 153; *Gayety* v.
*Bethune*, 14 Mass. 53; *Flora* v. *Carbeau*, 38 N. Y. 117;
*Beal* v. *N. Y. C. & H. R. R. R. Co.*, 41 Hun, 172.)
Neither the plaintiff, his ancestor, predecessor or grantor was
seized or possessed of the lands described in the complaint, or
any part thereof, within twenty years before the commence-
ment of this action.    Therefore, he cannot maintain the action.
(Code Civ. Pro. § 369; *Mayor, etc.,* v. *Carleton*, 113 N. Y.
293.)

EARL, J.   The Tonawanda Railroad Company was incorporated by the act, chapter 241 of the Laws of 1882, to construct and operate a railroad from Rochester, in the county of Monroe, to Attica, in the county of Genesee.   The first section declares that certain persons named, and others should be, and for the term of fifty years from the passage of the act, should continue to be a body corporate and politic.   Section 15 provides that in addition to the general powers given by the Revised Statutes to corporations, the Tonawanda Railroad Company should have certain specified powers, among which was the power "to enter upon any of the lands lying within the contemplated range of the said railroad for the purpose of examining, surveying and establishing its lines."   Section 16 provides : "In case the corporation shall not be able to acquire the title to the lands within which said railroad shall be laid, by purchase or voluntary cession, it shall be lawful for the said corporation to appropriate so much of such lands as may be necessary to its own use, for the purposes contemplated by this act, on complying with the provisions of the six following sections." Section 17 provides that the directors may present a petition to the vice-chancellor, setting forth by some proper description "the lands which are wanted for the construction of said railroad,   *   *   *   and praying for the appointment of appraisers to assess the damages which the owners of said lands will severally sustain by reason of the appropriation thereof by the said corporation to its own use."   Section 20 provides that the appraisers shall proceed "to ascertain and assess the damages which each individual owner will sustain by the appropriation of his land for the use or accommodation of such railroad or its appendages."   Section 21 requires that they shall report, specifying the damages which the owners of the respective parcels will sustain "by reason of the appropriation of the same for the purposes aforesaid."   Section 22 provides that on payment of the damages thus assessed "the corporation shall immediately become entitled to the use of the said lands for the purposes aforesaid."   Section 28 provides that "if the legislature of this state shall, at the expiration of ten and within

fifteen years from the completion of said railroad, make provision by law for the repayment to the said company of the amount expended by them in the construction of said railroad, together with all moneys expended by them for permanent fixtures for the use of said railroad, with interest on such sums at the rate of fourteen per cent per annum, together with all moneys expended by such company for repairs or otherwise, for the purposes of said road, after deducting the amount of tolls received by such road, then the said railroad, with all fixtures and appurtenances, shall vest in and become the property of the people of this state." And the last section provides that the legislature might at any time alter, modify or repeal the act.

By the act, chapter 236 of the Laws of 1850, the Tonawanda Railroad Company and the Attica and Buffalo Railroad Company were authorized to consolidate into a single corporation, and when consolidated the two corporations were to be merged into the new corporation. Section 4 of the act provides that all and singular the rights and franchises of the companies, " and all and singular the rights and interests of the said two corporations in and to every species of property, real, personal and mixed, and things in action, shall be deemed to be transferred to and vested in such new corporation without any other deed or transfer, and such new corporation shall hold and enjoy the same together with the right of way and all other rights of property, in the same manner and to the same extent as if the said two corporations above named should have continued, and retained the title and transacted the business of such corporations, and the title and real estate acquired by either of said two corporations shall not be deemed to revert or be impaired by anything in this act contained."

By proceedings taken under the act in the same year, the consolidation was effected, and the new corporation took the name of the Buffalo and Rochester Railroad Company.

Under the act, chapter 76 of the Laws of 1853, the Buffalo and Rochester Railroad Company and other railroad companies were consolidated, and the New York Central Railroad

Company thus formed, and section 4 of that act is the same as section 4 of the prior act.

Pursuant to the act, chapter 917 of the Laws of 1869, the New York Central Railroad Company and the Hudson River Railroad Company were consolidated, and the defendant was thus formed. Section 4 of the act provides that " all claims, demands, property, rights of way and every other interest, shall be as effectually the property of the new corporation as they were of the former corporations, parties to the said agreement and act; and the title to all real estate taken by deed or otherwise under the laws of this State, vested in either of such corporations, parties to said agreement and act, shall not be deemed to revert or be in an way impaired by reason of this act, or anything done by virtue thereof, but shall be vested in the new corporation by virtue of such act of consolidation."

Under these acts, the land in question has been continuously used and occupied by the successive railroad companies for railroad purposes. It was taken by condemnation proceedings under the act of 1832, and the claim of the plaintiff is that only its use was taken for fifty years, the chartered life of the Tonawanda Railroad Company, and that at the expiration of that term the use terminated and the land reverted to him as the successor in the title. The ingenious and vigorous argument of his counsel has failed to convince us that this action is maintainable.

It is conceded that the Tonawanda Railroad Company did not acquire a fee simple in the land taken by it under the act of 1832. Both parties claim that it acquired an easement in the land, but they differ as to the duration of the easement, the contention of the defendant being that it took a perpetual easement for railroad purposes. It took and paid for all the estate it was authorized to take under the act, and we must, therefore, look to the act to see what estate the legislature intended might be taken. In our efforts to arrive at the legislative intent, we must not only scrutinize the language used, but keep in view the purposes to which the land was to be devoted.

The land was to be taken for a permanent public use.  It could not have been understood or expected that the railroad should be operated for the accommodation of the public for fifty years, and that then, after the necessity for it had been greatly increased, it should disappear.  While the life of the corporation was limited to fifty years, it could not have been expected that it should really cease to exist at the end of that period. While the legislature reserved the right to cut its life short, it also had the power to extend it.  It is the experience of mankind that such *quasi* public corporations never come to an end by mere effluxion of time.  A railroad corporation which had, during fifty years, rendered a public service and properly discharged its corporate functions would, with the passage of years, become more and more useful and more and more a necessity.  Could it have been the legislative intention that at the end of fifty years the lands taken under the act, with the railroad embankment, ties, culverts, bridges, buildings and other structures, so far as they had become fixtures, should revert to the original owners or their successors in title?  Could it have been the intention that at the end of fifty years any new or reorganized company could use and operate the railroad only by a new appraisal of damages which might include and would probably have to include the value of the land with a complete railroad thereon?  It is improbable that the parties who sought the charter, and the legislature which granted it, intended the results claimed by the plaintiff.

There is nothing in the act which limits the use to fifty years or any other term.  The corporation could appropriate only such lands as were "necessary to its own use;" but by this language the estate in the lands appropriated was not necessarily limited to the term of fifty years.  The corporation could not appropriate any land not needed for its use.  But when it appropriated an easement in land, how long was the easement to endure?  The damages were to be assessed for the devotion of the land to railroad purposes, and an easement was to be taken for such purposes, and that easement was to be paid for by the corporation and to become its property.

Such property it could by authority of law sell, lease or mortgage, as it could its other property, and the easement would continue so long as it was needed for the purposes of the railroad by whomsoever owned for which it was appropriated. The legislature reserved the right to alter or modify the charter, and thus the life of the corporation could be extended. In such an event was it intended that there should be a new appropriation of the land, and a new appraisal of damages greatly enhanced by the construction of the railroad before the same railroad company, with its extended charter, could operate its road? By section 28 of the act the People of the state were authorized, by making certain payments, to take this road, when it, with all its fixtures and appurtenances, should " vest in and become the property of the People of this state." It certainly was not contemplated that the People should make the payments and then obtain a title limited by years, which would inevitably pass away from them at the end of the fifty years. Was it within the legislative contemplation that the People would be obliged, in order to operate the road in the public interest, to again appropriate the land with a complete railroad thereon, and thus again pay for the railroad?

We are thus brought to the conclusion that the legislature did not intend in the act of 1832 to limit to the term of fifty years the easements acquired in lands thereunder, and that such easements by the successive consolidation acts and agreements became vested in the defendant.

There is nothing in the claim of the plaintiff that the damages of the land owner were appraised upon the assumption that an easement for fifty years only was taken. It is believed that a possible reverter of the land is never contemplated in the assessment of damage in such cases, and that the appropriation is regarded as permanent and the damages are awarded upon that basis. (Wood's Railway Law, 767; *T. & B. R. R. Co.* v. *Lee,* 13 Barb. 169 ; *C. & N. F. R. R. Co.* v. *Payne,* 16 id. 273 ; *In re U. V. & J. R. R. Co.,* 53 id. 457 ; *In re U., C. & S. V. R. R. Co.,* 56 id. 456 ; *In re N. Y. C. & H. R. R. R. Co.,* 6 Hun, 149 ; *In re P. P. & C. I. R. R. Co.,* 13 id. 345.)

No other basis would be practicable as the chartered life of the corporation might be curtailed or prolonged and a possible or distant reverter could not well be taken into the account in the estimate of damages. If, therefore, this action could prevail a land owner might receive and enjoy the full value of his land damages for fifty years, and at the end of that time have his land again enhanced in value by a railroad thereon.

But if we are wrong in the views thus far expressed as to the estate in the land appropriated, only one other view may be taken with any plausibility, and that is that the easement was taken for the use of the corporation during its corporate life. There is very little reason for saying that it was taken for an absolute term of fifty years. Then, it was taken for the use of the corporation, and when it ceased to exist the use could not be prolonged. The corporate life came to an end in 1850, at the time of the first consolidation. The new corporation took the place of the two corporations, and they then passed utterly out of existence. (Boone on Corp. 185; Wood's Field on Corp. 545, 547, 554, 667; *Shields* v. *Ohio*, 95 U. S. 319; *R. R. Co.* v. *Maine*, 96 id. 499; *R. R. Co.* v. *Georgia*, 98 id. 359.) From 1850 to the commencement of this action, more than thirty years, this land was held and possessed under a claim of right, adversely, by the defendant and its predecessors in the title. During the first twenty years of that time, unless a perpetual easement for railroad purposes was originally taken, the possession was wrongful and the owners of the fee could have re-entered or brought ejectment. That under such circumstances the action is barred by adverse possession is free from doubt.

Our conclusion, therefore, is that the judgment should be affirmed, with costs.

All concur.

Judgment affirmed.