†L. S. & M. S. Ry. Co. v. State of Ohio ex rel. Lawrence.

LAW REQUIRING THE STOPPAGE OF TRAINS IS VALID.

Section 3320, Rev. Stat., directing that each railroad company shall cause three of its regular passenger trains each day to stop at cities or villages having over three thousand inhabitants, long enough to receive and let off passengers, is not invalid as interfering with commerce.

ERROR to the Court of Common Pleas of Cuyahoga county.

BALDWIN, J.

This action was originally one before a justice of the peace, by defendant in error, to recover a penalty under section 3320, Rev. Stat., for not stopping its trains at West Cleveland. The action went by appeal to the court of common pleas, was there decided in favor of the defendant in error, and we are asked in error to reverse the judgment of the court of common pleas.

The question raised is the validity of sec. 3320, Rev. Stat., and, without any formal recital, we will state such of the facts found by the court as seem proper, to understand the bearing to that question.

On October 9, 1890, the date complained of, the village was a municipal corporation having 3,000 inhabitants, and plaintiff in error was a corporation organized under the laws of Ohio and several other states, running and operating a railroad running through West Cleveland, and extending from Chicago to Buffalo, and daily ran thereon through said village each way three or more regular trains carrying passengers. On that day, not being Sunday, the company only stopped one of its trains running each way; that said railway was engaged in interstate commerce from Chicago to Buffalo; that there was not more than one regular passenger train each way not engaged in interstate commerce, or that did not have on board passengers who had paid their fares and were entitled to ride through different states on said trains; that the one train each way not engaged in interstate commerce, did stop at West Cleveland. Then follows an enumeration of trains running each way; a finding that the time required for stopping was three minutes; and that the total number of cities and villages on the line of the railroad having 3,000 inhabitants and over were thirteen in number.

The act in question provides:

"Each (railroad) company shall cause three each way of its regular trains carrying passengers, if so many are run daily, Sundays excepted, to stop at a station, city or village containing over three thousand inhabitants for a time sufficient to receive and let off passengers. If a company, or any agent or employee thereof, violate or cause or permit to be violated this provision, such company, agent or employee shall be liable to a forfeiture of not more than one hundred and not less than twenty-five dollars, to be recovered in an action in the name of the state, upon the complaint of any person before a justice of the peace of the county in which the violation occurs, for the benefit of the general fund of the county," etc.

It is claimed that this section of the statute is a regulation of commerce "among the several states," and therefore a violation of sec. 8 of the constitution of the United States, providing that "congress shall have power to regulate commerce with foreign nations and among the several states and with Indian tribes;" that the legislature has no power to regulate the stopping of trains, and that until congress shall act, the railway company has absolute control of that matter, and may stop at stations or not as it pleases. This is a very

†This judgment was affirmed by the Supreme Court, without report; 56 O. S., 736.

Railway Co. v. State ex rel. Lawrence.

important question, for if the railway has the power it claims, it can conduct its business with gross disregard of the interests of the public, and unmake towns and cities until congress shall interfere.

A prior act has been before our Supreme Court in *Pennsylvania Co.* v. *Wentz*, 37 O. S., 33. The court there said: "But the power of a railroad company to adopt or enforce such regulation is subject to legislative control," and the railroad company was held to be controlled by the act as passed in 1867, which is found in sec. 3320, Rev. Stat., of 1880.

It is said, however, that the question of the constitutionality of the act itself was not discussed or decided in that case.

It is not contended that outside of the question made here, the company and the subject-matter is not proper for the action of the legislature; nor can it be. Ohio constitution, art. 13, par. 2; *Penn. Co.* v. *Wentz*, 37 O. S., 333; *Shields* v. *State*, 20 O. S., 86, and 95 U. S., 319.

Although the act in question may, and as the railroad company now conducts its trains, does affect the transportation of persons traveling through the state of Ohio from one state to another, we are of the opinion that the act is not a regulation of commerce between states, although it might be void if congress, with its paramount authority, should pass an act with which this is inconsistent.

It is plain that the legislature had no intention to regulate the passage from state to state, but only to afford its own citizens proper and reasonable facilities for getting on and off the cars of a company created by it and subject to its reasonable regulations. Nor does the present act necessarily interfere with the rapid transit of a single passenger traveling through the state.

The act passed upon in 37 O. S., provides "that every railroad company in this state shall cause all its trains of cars for passengers to entirely stop upon each arrival at any station."

The present act does not so provide, but only for three each way, if so many are run daily, Sundays excepted. It is not required that these shall be through trains, and no proof was made that the regulation is so oppressive that it necessarily affects passengers from state to state.

It is not aimed at interstate commerce. It makes no discrimination against citizens of other states; it may even be for the convenience of interstate commerce as facilitating transportation to and from this place from other states.

The railroad may comply with the act solely by trains that do not engage in interstate commerce; that "it is not everything that affects commerce that amounts to a regulation of it within the constitution," is a principle laid down in 15 Wallace, 293, and quoted with approval in 18 Wallace, 282, Delaware R. R. Tax.

It is determined in 21 Wallace, 473, that an act "may incidentally affect transportation," and still not amount to a regulation of commerce between the states or to a discrimination against the citizens of other states (*Railroad* v. *Maryland*).

It is a part of the syllabus of *Robbins* v. *Shelby County*, 120 U. S. Rep., 489, that "a state may enact laws that in practice operate to affect commerce among the states, as by providing in the legitimate exercise of its police power and general jurisdiction for the security and comfort of persons and protection of property," and what more necessary for the comfort of persons and protection of property than reasonable access for travel to a railroad passing through a town or city. See, also, citation of the above case in *State* v. *Railway*, 47 O. S., 137.

"It cannot be doubted," says Mr. Cooley, "that there is ample power in the legislative department of the state to adopt all necessary legislation for the purpose of enforcing the obligations of railway companies or carriers of persons and goods to accommodate the public impartially, and to make every reasonable provision for carrying with safety and despatch." Cooley in Const. Lim., 724 (581).

Nor is the act one necessarily of a national character. It is local, and may better be regulated by local laws. At what towns trains should stop may depend

on the size, distance between stations, sparseness of population, how many trains each day, character of business and population, and many other considerations which might be enumerated.

The subject may well come into the characterization of the Supreme Court of the United States in 116 U. S. Rep., 334, Commissioners' case, where it is said: ''The state may certainly require the company to fence so much of its road as lies within the state, to stop its trains at railroad crossings, to slacken speed while running in a crowded thoroughfare, to post its tariffs and time tables at proper places, and other things of a kindred character affecting the comfort, the convenience or the safety of those who are entitled to look to the state for protection against the wrongful or negligent conduct of others.''

Nor can any embarrassment arise from such local regulations; the whole subject in principle and convenient practice seems to us covered by the language to be found in *Mobile* v. *Kimball*, 102 N. Y., 698:

> "Where from the nature of the subject or the sphere of its operation the case is local and limited, special regulations adapted to the immediate locality could not have been contemplated, state action upon such subjects can constitute no interference with the commercial power of congress; for when that acts the state authority is suspended. Inaction of congress upon these subjects of a local nature or operation, unlike its inaction upon matters affecting all the states and requiring uniformity of regulation, is not to be taken as a declaration that nothing shall be done with respect to them; but is rather to be deemed a declaration that for the time being and until it sees fit, they may be regulated by state authority."

The constitutionality of an act requiring ''all regular passenger trains to stop at county seats long enough to receive and let off passengers with safety,'' was affirmed in *Railroad Co*. v. *The People*, 105 Ill., 657.

Both this statute and that considered in 37 O. S., seem fairly to come within the rules laid down in *Mobile* v. *Kimball, supra.* But if they did, the present act does not cover ''all trains,'' and does not necessarily affect a single interstate passenger, for the railroad company might comply with it without stopping a single train carrying interstate passengers.

We think the act is valid, and the decision of the court of common pleas is affirmed.

*Estep, Dickey, Carr & Goff*, for plaintiff in error.

*W. H. Polhamus*, for defendant in error.