### Trust Company's Branches.

*Corporations — Trust companies — Specially chartered companies — Branches — Control by Banking Department — Acts of April 13, 1868, and April 29, 1874.*

A trust company chartered under the special Act of April 13, 1868, P. L. 966, to carry on its business in the City of Philadelphia "or elsewhere, by agency, as the directors may establish," may conduct its business either within or without Philadelphia at such agencies or branches as the directors may establish, but such branches must be conducted according to the rules laid down by the Banking Department with reference to the conduct of branch offices by trust companies chartered under the general Act of April 29, 1874, P. L. 73.

Department of Justice. Opinion to Hon. Peter G. Cameron, Secretary of Banking.

ANDERSON, Dep. Att'y-Gen., June 8, 1926.—The contents of the letter of May 17, 1926, which Alvin M. Whitney, 1st Deputy Secretary of your department, has transmitted to the Attorney-General, have been noted with interest, and the question upon which you desire an opinion has been carefully considered.

By the Act of April 13, 1868, P. L. 966, the United Security Life Insurance and Trust Company of Pennsylvania was incorporated and the business of that Company was authorized to "be carried on in the City of Philadelphia, Pennsylvania, or elsewhere, by agency, as the directors shall determine, and at such agencies as they may establish."

Trust Company's Branches.

This is one of the special charters which are graphically described by Sulzberger, J., in the Common Pleas, and by Elkin, J., in the Supreme Court, in DeHaven *v.* Pratt, 223 Pa. 633, where the historic differences in Pennsylvania between banks and trust companies are pointed out. By those special acts the legislature introduced trust companies to Pennsylvania, as a supposed minor branch of the business of life insurance. It was not until 1874, when the present Constitution of Pennsylvania went into effect, and the General Corporation Law of April 29, 1874, P. L. 73, was approved, that trust companies were formed into a distinct class of corporations. Under this last mentioned act and its supplements all Pennsylvania trust companies have since been incorporated and permitted to do business.

You ask whether under the provisions of the Act of April 13, 1868, above mentioned, the United Security Life Insurance and Trust Company of Pennsylvania is authorized to conduct its regular business at the agencies either in or outside of the City of Philadelphia which have been established by its directors; and whether the Department of Banking has the authority to require its branch offices to be conducted according to the instructions contained in the opinions of former Attorneys-General with reference to branch offices conducted by trust companies chartered under the General Corporation Law of 1874 and its supplements.

The answer to these questions is basically found in section 17 of the Act of April 13, 1868, P. L. 966, wherein the legislature reserved the power to alter, revoke or annul the charter of the said company whenever, in their opinion, it might be injurious to the citizens of the Commonwealth. To complete this answer, reference must next be made to the powers which the legislature has conferred upon the Department of Banking. There was not even a Commissioner of Banking in existence when the United Security Life Insurance and Trust Company was chartered, but the functions which from time to time the legislature thereafter conferred on the Commissioner of Banking have now been extended and transferred to a distinct department of the State Government. By article XXII, sections 2202-23 of the Administrative Code of June 7, 1923, P. L. 498, the Department of Banking is treated as follows:

"The Department of Banking shall have supervision over:

"(*a*) All corporations now or hereafter incorporated under the laws of this or any other State and authorized to transact business in this State, which have power to receive and are receiving money on deposit or for safekeeping otherwise than as bailees, including all banks, banking companies, co-operative banking associations, trust, safe deposit, real estate, mortgage, title insurance, guaranty, surety, and indemnity companies, savings institutions, savings banks, and provident institutions.

"(*b*) Mutual savings funds, building and loan associations, and corporations doing a safe deposit business only.

"(*c*) All national banking associations located within this State, now or hereafter incorporated under the laws of the United States, which shall, in pursuance of Federal law or regulation, be granted a permit to act, or shall act, as trustee, executor, administrator, registrar of stocks and bonds, guardian of estates, assignee, receiver, committee of estates of insane persons, or in any other fiduciary capacity.

"(*d*) All unincorporated banks, except such as are or shall be exempt by law, and all such individuals, partnerships, and unincorporated associations as now are or shall be by law made subject to the supervision of the department, and any individuals or associations of individuals doing the business

of co-operative banks, or of building and loan associations, or a business in the nature of either, whether under the guise of a deed of trust or otherwise." (June 7, 1923, art. XXII, § 2202, P. L. 498.)

"The Department of Banking shall enforce and administer the laws of this Commonwealth in relation to all corporations and persons under its jurisdiction, and shall see that the greatest possible safety is afforded to depositors therein or therewith and to other interested persons." (June 7, 1923, art. XXII, § 2203, P. L. 498.)

By section 4 of the Banking Act of June 15, 1923, P. L. 809, it is provided:

"There shall continue to be a separate and distinct department, known as the Department of Banking, charged with the supervision of all the cor- porations and persons hereinafter described, and with the duty of taking care that the laws of this Commonwealth in relation thereto shall be faith- fully executed, and that the greatest safety to depositors therein or therewith and to other interested persons shall be afforded.

"The said supervision, duties, and powers shall extend and apply to the following corporations now or hereafter incorporated under the laws of this State or under the laws of any other State and authorized to transact busi- ness in this State; namely, all such corporations having power to receive and receiving money on deposit or for safekeeping otherwise than as bailee, including all banks, banking companies, co-operative banking associations, trust, safe deposit, real estate, mortgage, title, insurance, guarantee, surety and indemnity companies, savings institutions, savings banks, and provident institutions. The said supervision, duties, and powers shall also extend and apply to mutual savings funds, building and loan associations, and cor- porations doing a safe-deposit business only.

"The said supervision, duties, and powers shall also extend and apply to all national banking associations, located in this State, now or hereafter incor- porated under the laws of the United States, which shall, in pursuance of Federal law or regulation, be granted a permit to act or shall act as trustee, executor, administrator, registrar of stocks and bonds, guardian of estates, assignee, receiver, committee of estates of lunatics, or in any other fiduciary capacity.

"The said supervision, duties, and powers shall also extend and apply to all private or unincorporated banks, except such as are or shall be exempted by law, and to all such individuals, partnerships, and unincorporated associa- tions, as are or shall be by law made subject to the supervision of said department, and to any individuals or associations of individuals doing the business of co-operative banks or of building and loan associations, or a busi- ness in the nature of either, whether under the guise of a deed of trust or otherwise."

That this fundamental legislation of 1923 amounts to an alteration of the charter of the corporation under consideration follows from certain principles of law which have been laid down by the courts. In Relfe v. Rundle, 103 U. S. 222, in passing upon the status of the Missouri Superintendent of In- surance as a statutory liquidator of a dissolved insurance corporation, the Supreme Court of the United States said: "Relfe is not an officer of the Missouri State Court, but the person designated by law to take the property of any dissolved life insurance corporation of that State, and hold and dis- pose of it in trust for the use and benefit of creditors, and other parties interested. The law which clothed him with this trust was, in legal effect, part of the charter of the corporation."

More recently, in connection with the liquidation of a Pennsylvania casualty insurance company under the Insurance Act of June 1, 1911, P. L. 599, a Federal court sitting in Philadelphia said: "The State engaged in this undertaking primarily for the protection of the public. Being for the public, its action is a governmental function. When in its exercise it becomes necessary to protect the public from insolvent or improperly conducted insurance companies, the State pursues a remedy prescribed by the same law that conferred the corporation's rights and defined the State's duties."

This is an entirely constitutional exercise of the police power of the State. In Com. v. Vrooman, 164 Pa. 306, dealing with an act passed in 1870, the majority of our Supreme Court said:

"This question is to be considered upon the state of the law as it is when the question is raised. Since 1870 the Constitution of the State has been remodeled and many of its new provisions have been enforced by suitable legislation. Our question is not, therefore, whether the Act of 1870 was valid under the Constitution as it then stood, but whether it was valid when its provisions were invoked against the defendant. . . . The police power must necessarily enlarge its range as business expands and society develops. . . . Corporations derive their existence from the State, and hold their franchises subject to legislative control. They are subject to the visitorial power of the Commonwealth, and they may be, and are, in fact, required to lay open before the several departments of state government, and before the public, the character and extent of their business, the profits realized, the dividends declared, and the investments made. . . . The police power of a state may be exerted for the complete or the partial control of a given business. It may prohibit it absolutely to all persons for the purpose of suppression. It may permit it to some persons and under certain restrictions in order to secure control over it and hold it within proper bounds: Stone v. Mississippi, 101 U. S. 814."

And the minority of the court there agreed "that the legislature may, in the exercise of its police power, absolutely forbid contracts which are inimical to public interests; and, second, may adopt suitable regulations of contracts for the protection of the public."

The present Constitution, in article XVI, section 3, provides that "the exercise of the police power of the State shall never be abridged or so construed as to permit corporations to conduct their business in such manner as to infringe the equal rights of individuals or the general well being of the State."

Of course, the power of alteration and amendment is not without limit. The alteration must be reasonable, and be consistent with the scope and object of the act of incorporation: Shields v. Ohio, 95 U. S. 319. The reserved right to amend a corporate charter "does not confer mere arbitrary power, and cannot be so exercised as to violate fundamental principles of justice by . . . taking of property without due process of law:" Stearns v. Minnesota, 179 U. S. 223.

In D., L. & W. R. R. Co. v. Public Utilities, 85 N. J. L. 28, it was held that, under such a power, the company could not be required to furnish free transportation to certain designated officials. These and numerous other cases of similar import are cited in Chicago, M. & St. P. R. R. Co. v. Wisconsin, 238 U. S. 491. They point out Federal restraints on state action which must constantly be borne in mind.

If violations of the Federal Constitution are avoided, you are advised that while the United Security Life Insurance and Trust Company is authorized to conduct its regular business at the agencies either in or outside of the City

of Philadelphia which have been established by its directors, those agencies or branch offices must be conducted according to the same instructions which this department in the past has given your department with reference to the conduct of branch offices by trust companies chartered under the General Corporation Act of 1874.

From C. P. Addams, Harrisburg, Pa.