## SAN JOAQUIN & KINGS RIVER CANAL & IRRIGATION CO. v. STANISLAUS COUNTY et al.

(Circuit Court, N. D. California.   January 6, 1902.)

### No. 12,257.

1. STATES—LIMITATION OF POWERS—REPEAL OR AMENDMENT OF CORPORATION LAWS.

The power of a state, reserved by its constitution, to alter, amend, or repeal general laws concerning corporations, is subordinate to, and limited by, the provisions of the federal constitution inhibiting laws impairing the obligations of contracts, depriving persons of property without due process of law, or denying the equal protection of the laws. Rights acquired and capital invested by a corporation or its stockholders in the lawful exercise of powers conferred by such laws are within the protection of such constitutional provisions, and cannot be arbitrarily destroyed by subsequent state legislation.

2. IRRIGATION COMPANIES—REGULATION OF RATES—CALIFORNIA STATUTES.

Act Cal. May 14, 1862 (St. 1862, p. 540), amending the general incorporation law of 1853, and providing for the "incorporation of canal companies and the construction of canals," gives companies incorporated thereunder the right to charge and collect rentals or tolls for water, subject to regulation by county boards, but provides that the rates shall not be reduced by such boards so low as to yield to the stockholders less than a certain per cent. "upon the capital actually invested." Act March 12, 1885 (St. 1885, p. 95), to regulate and control the sale, rental, and distribution of appropriated water in the state, requires county boards, on petition, to fix rates to be charged by any distributer of water in the county, outside of cities and towns. It provides that the board shall "estimate the value of all property actually used and useful to the appropriation and furnishing of such water," estimate the reasonable annual expenses of the person or corporation whose franchise is controlled, and adjust the net annual receipts and profits so that they may be not less than 6 nor more than 18 per cent. "upon the value of property actually used and useful." It further provides that in fixing rates "said board may take into estimation any and all other facts, circumstances, and conditions pertinent thereto, to the end and purpose that such rates shall be equal, reasonable, and just, both to such corporations and to said inhabitants." Held, that assuming that under the later act the value to be estimated by the board was the actual cash value at the time, thus fixing a different basis for the rates established than that provided by the earlier act, it could not be construed, as applied to a corporation organized under the act of 1862, to authorize the board to ignore the capital "actually invested," which would result in many cases in impairing the obligation of the contract created by the company's charter, as well as depriving it of property without due process of law, but that as to such companies it was the duty of the board, under its power to take into estimation all other pertinent facts, to consider the capital actually invested, at least in the property actually used and useful, and to fix such rates, within the limits prescribed by the act, as should be reasonable with reference to such investment.

3. CORPORATIONS—CHARTER RIGHTS—EFFECT OF NONUSER.

A statutory right embraced in the charter of a corporation must be reduced to possession to secure the constitutional protection against alteration or repeal. Where an irrigation company, organized under Act Cal. May 14, 1862 (St. 1862, p. 540), which provided that county boards should not reduce the rates of such companies "so low as to yield to the stockholders less than 1½ per cent. per month upon the capital actually invested," in fixing its own rates, which it did for 25 years, never made them so high as to yield such per cent. to its stockholders,

its constitutional rights are not impaired by a subsequent statute author- izing county boards to fix rates below the minimum prescribed in the incorporation act.

In Equity. Suit to enjoin the enforcement of water rates estab- lished by the board of supervisors of defendant county, to be charged by complainant. On final hearing.

G. W. McEnerney and W. B. Treadwell, for complainant.

C. A. Stonesifer and L. W. Fulkerth, for defendants.

MORROW, Circuit Judge. This is a suit in equity, brought on September 29, 1896, to enjoin the defendants from enforcing an order of the board of supervisors of Stanislaus county fixing the rates to be charged by the complainant for water distributed by it, and to declare said order null and void. It is alleged in the bill that the complainant is a corporation organized under the laws of California in September, 1871, in accordance with the provisions of an act of the legislature of the state of California entitled "An act to provide for the formation of corporations for certain purposes," approved April 14, 1853 (St. 1853, p. 87), as amended by the act approved May 14, 1862, entitled "An act to authorize the incorporation of canal companies, and the construction of canals" (St. 1862, p. 540); that the defendant the county of Stanislaus is one of the political subdivisions of the state of California and within the Northern district of California; that the board of supervisors of said county of Stanislaus is the governing or legislative body of said county, and that the defendants George W. Toombs, Charles H. Osler, James Alfred Davis, Thomas J. Car- michael, and Joseph P. Barnes were at all the times stated in the bill the duly elected, qualified, and acting members of the said board, and citizens and residents of the Northern district of California. It is alleged that for more than 10 years past the complainant has been engaged in the business of appropriating water for irrigation, sale, rental, and distribution, for hire, and has for the last 10 years main- tained, and now maintains, a canal through the counties of Fresno, Merced, and Stanislaus, in the state of California, in which it carries its water to the takers and consumers thereof; that complainant is now, and for 10 years last past has been, the owner of the right to take the whole flow of water of the San Joaquin river through the left bank of said stream at its junction with Fresno Slough, and has for the last 10 years appropriated said water, for sale, rental, and distri- bution to its customers, by means of a canal running from the point of appropriation through the counties of Fresno and Merced and a large part of the county of Stanislaus, which canal was, on January 1, 1896, and now is, including its lateral and parallel branches, 120¾ miles in length; that of this length of canal 11$^7/_{10}$ miles are within the boundaries of the defendant county of Stanislaus. It is alleged that the reasonable value of these canals, ditches, flumes, water chutes, and other property actually used in the appropriation and furnishing of said water is of the amount of $1,000,000; and that the right of appropriation of said water acquired by the complainant more than 20 years ago, ever since held by it, and necessary to enable it to sup-

ply water to its customers in the counties aforesaid, is of the reasonable value of $500,000. It is further alleged that the complainant has a capital stock of 100,000 shares of the par value of $100 per share, on each of which the sum of $10 has been paid up, and which stock is held by divers persons; that on January 1, 1896, and thereafter until the adoption of the pretended regulation by the defendants, the rates charged by complainant to its customers in the said counties were as follows: For irrigating alfalfa, trees, and vines, $2.50 per acre per annum; cereals, $2 per acre; gardens, $5 per acre; for water for sheep, hogs, or goats, $10 per 1,000 per month; for horses, cattle, mules, and live stock generally, $40 per 1,000 per month. After setting out the total gross receipts and expenditures of the complainant for the years 1887 to 1895, inclusive, the bill alleges that the average gross receipts of the complainant during the said nine years have been $54,734.15 per annum, and the average cost of the maintenance of the said property $22,045.16 per annum; that the net returns for the said nine years have amounted to a fraction over 2 per cent. per annum on the value of the property actually and necessarily used in appropriating and furnishing such water by complainant to its customers, have never reached 3½ per cent. of such value, and have never amounted to 5 per cent. per annum on the value of the canals, ditches, flumes, water chutes, and all other property actually used in the appropriation and furnishing of such water exclusive of the value of the right of appropriation. It is alleged that the operations of the complainant in the conduct of said business have been characterized by the strictest prudence and economy, and that the rates charged to its customers were and are fair and reasonable. It is further alleged that on March 10, 1896, a petition was filed in the office of the board of supervisors of the county of Stanislaus, signed by 25 persons claiming to be inhabitants and taxpayers of said county, asking the said board to regulate and control the rates of compensation to be collected by complainant from the sale, rental, and distribution of the water owned by complainant to the inhabitants of Stanislaus county. This petition was filed pursuant to the provisions of an act of the legislature approved March 12, 1885, entitled "An act to regulate and control the sale, rental, and distribution of appropriated water in this state, other than in any city, city and county, or town therein, and to secure the rights of way for the conveyance of such water to the places of use." St. 1885, p. 95. It is alleged that all of the proceedings taken by the board of supervisors with reference to this petition were under the pretended authority and direction of this act; that on June 24, 1896, said petition came on to be heard by said board, and the individual defendants, as members of said board, proceeded to fix the following rates to be thereafter charged by the complainant for the use of its water in the county of Stanislaus, namely: For irrigating alfalfa, perennial grasses, and cereals $1.50 per acre per annum, for trees and vines $2 per acre, for gardens $3.50 per acre, for water for sheep, hogs, or goats $6 per 1,000 per month, and for horses, cattle, mules, and other live stock $25 per 1,000 per month; that the said board also estimated and fixed as reasonable annual expenses of repairs and management the sum of $22,000. It is averred that the

rates so fixed by said board are grossly unfair and unreasonable, and, if applied to the complainant's whole business, will not realize to complainant more than $40,000 gross per year, or less than $1\frac{4}{5}$ per cent. upon the value of the canals and other property actually used in the appropriation and furnishing of the water, exclusive of the value of the right of appropriation thereof and that, including the value of said right of appropriation, will not yield to complainant more than $1\frac{1}{5}$ per cent. per annum; that in fixing these rates the defendants acted in willful violation of complainant's rights; that defendants estimated the value of the property used in and useful to the appropriation of said water by complainant at the sum of $337,000, excluding as one of the items of such property the complainant's right of appropriation; that such estimation was arbitrarily made, without receiving any evidence of the value of said property, the said defendants well knowing that the value of said property, exclusive of the right of appropriation of said water, was far in excess of the sum of $750,000. It is averred that there is no reason to believe that the value of complainant's business will or can be increased by reason of the reduced rates so fixed and established, but on the contrary, there will be no compensatory increase whatever; that the expenses of operating its business cannot be diminished, and, if said reduction be applied to complainant's whole business, the net receipts will not amount to or exceed 3 per cent. per annum upon the value of the property used. It is further alleged that said act under which it is claimed that said rates have been fixed is in violation of and repugnant to section 1 of the fourteenth amendment to the constitution of the United States, in that by the provisions of said act it is declared that rates shall be fixed and established without reference to the value of the right of any person, corporation, or association to receive compensation for or a return upon the value of any right by it held or owned to appropriate any waters of this state for sale, rental, and distribution to the inhabitants thereof. It is alleged that, unless immediate relief is granted, complainant will be harassed by a multiplicity of suits to compel it to furnish water at the rates fixed by the defendants; that the upholding of said rates will amount to a deprivation by the defendants of complainant's property without due process of law, and a denial to complainant of its rights under section 1 of article 14 of the amendments to the constitution of the United States. An injunction is prayed for restraining the defendants from enforcing said order fixing rates, and a decree asked adjudging said order to be null and void, and that complainant is entitled to have its rates for supplying water to its customers so fixed as to return a reasonable and just compensation for services rendered.

This bill was demurred to on January 2, 1897, for want of jurisdiction and of equity. It was urged that the absence of diversity of citizenship of the parties was fatal to federal jurisdiction. The demurrer was overruled by this court (90 Fed. 516) on the ground that the averments of the bill presented a federal question, which is of itself a sufficient source of jurisdiction without the coexistence of diversity of citizenship. The federal question was determined to be contained in the allegations that the acts of the defendants, if unrestrained,

would result in the practical deprivation by defendants of the complainant's property without due process of law, and the denial to complainant of the equal protection of the laws vouchsafed ·by the fourteenth amendment to the constitution of the United States. The answer of the defendants was filed on July 20, 1898. In it the defendants deny that the complainant had ever been the owner of the right to take the whole flow of water, of said river at any point of diversion. It is denied that the property of the complainant used in the appropriation and furnishing of water was ever of a higher value than $251,000, that the alleged right of appropriation has ever had any value, or that· complainant's capital stock has a value of more than $3 per share. Defendants aver that during said period of nine years complainant has received net returns upon the value of all its property actually and necessarily used and useful in the appropriation and furnishing of water to its customers, together with the right to appropriate said water, amounting to more than 9 per cent. per annum on the average, and some years as high as 14 per cent., and that with prudent management such net returns would have been doubled. In this behalf it is averred that the receipts of the complainant have been greatly reduced by the fact that the firm of Miller & Lux, of which the president of the complainant corporation is a member, annually irrigate many thousand acres of their land from complainant's canal, free of charge, and that water has been furnished to said firm by complainant at one-half the rate· charged to other customers. In regard to the proceedings in connection with the said petition of March 10, 1896, to the board of supervisors of Stanislaus county, the defendants aver that the complainant appeared before the said board by counsel on June 10, 1896; that on June 24, 1896, all parties being ready, the matter proceeded, evidence was introduced, argument made, and after due and careful deliberation an order was made by the said board fixing the rates as aforesaid. There is also set up in the answer the report of an expert civil engineer and the deputy county surveyor, alleged to have been appointed by the defendants to report upon the estimated cost of the canal, ditches, and all other property used in complainant's business, upon which report it is averred that the said board of supervisors estimated the property of complainant to be worth $337,000, and the reasonable annual expenses of management $22,000. They further aver that the resolution fixing the said rates was and is the act of the said board, according to its best judgment and discretion, within its jurisdiction, and not subject to review by any court. It is denied that said rates are unfair or unreasonable, and it is averred that they will yield to complainant more than 9 per cent. upon the value of its property used in the carrying on of the said business, including the value of the right of appropriation under prudent and careful management. Defendants deny that the act of the legislature under which the said board acted in fixing the said rates is repugnant to section 1 of the fourteenth amendment to the constitution of the United States, and also deny generally the allegations upon which complainant applies for relief to this court. They aver that the functions of said board ended upon the making of said order on June 26, 1896; that said board has become functus officio with respect to the

said order and all matters in connection therewith, and the same is to be enforced, if at all, by other officers of the state of California, not now before the court, and in other proceedings before the state courts of this state; that under the constitution and laws of California permitting complainant to exercise its franchise and to appropriate and sell the waters of the state, the right was reserved by the state to regulate and control the sale and distribution of such appropriated waters; and complainant, having acted under and by virtue of such laws, cannot now be heard to complain that the laws of the state providing for such regulation and control are not binding upon complainant; wherefore defendants ask that complainant's bill be dismissed.

On June 8, 1899, an amendment to the bill of complaint was filed by the complainant, adding thereto the allegation that by section 3 of the aforesaid act of May 14, 1862, it was provided that "every company organized as aforesaid shall have power, and the same is hereby granted, * * * to establish, collect, and receive rates, water rents, or tolls, which shall be subject to regulation by the board of supervisors of the county or counties in which the work is situated, but which shall not be reduced by the supervisors so low as to yield to the stockholders less than one and one-half per cent. per month upon the capital actually invested." St. 1862, p. 541. It is alleged that prior to March 1, 1885, this complainant and its stockholders actually invested, under the authority of the said act, a capital amounting to $971,113.13 in money, all of which was actually and necessarily expended by the complainant in the purchase and construction of canals and other property used in and useful to the appropriation and furnishing of the water aforesaid, which property was on March 1, 1885, and still is, of the reasonable value of $971,113.13; that, though the defendants aver and claim that the said provisions were repealed by the act of March 12, 1885, hereinbefore referred to, complainant avers that such a construction is in violation of and repugnant to the provisions of section 10 of article 1 of the constitution of the United States, in this: that it would impair the obligation of the contract between the state of California and this complainant made and entered into under the authority of said section 3 of said act of May 14, 1862. For the purpose of limiting the question in this case, complainant's counsel at the hearing withdrew the claim for the value of the right of appropriation of the water of the San Joaquin river in estimating the value of the property used and useful in the appropriation and furnishing of said water.

The first question to be determined is the effect of the incorporation of the complainant under the act of the legislature of April 14, 1853, providing "for the formation of corporations for certain purposes," as amended by the act of May 14, 1862, providing for the "incorporation of canal companies and the construction of canals." It is contended on behalf of the complainant that, as it was organized as a corporation in 1871 under the act of 1853, as amended by the act of 1862, section 3 of the latter act, limiting the right of the board of supervisors to reduce rates so as to yield to stockholders not less than 1½ per cent. per month on the capital stock actually invested, was a contract with the state for the time for which the corporation was

organized. It is contended on the other hand, on behalf of the defendants, that the act of the legislature approved March 12, 1885 (St. Cal. 1885, p. 95), entitled "An act to regulate and control the sale, rental, and distribution of appropriated water in this state, other than in any city, city and county, or town therein, and to secure the rights of way for the conveyance of such water to the place of use," repealed all prior acts in conflict therewith, and in section 5 authorized the board of supervisors of the state to regulate and control the water rates that might be·charged by any person, company, association, or corporation, and provided that such rates should be reasonable and just, and so limited that the annual receipts and profits thereof should be not less than 6 nor more than 18 per cent. upon the value of all the property actually used in and useful to the appropriation and furnishing of such water, as estimated by the said board of supervisors. It is objected on the part of the complainant that the act of 1885 in no way changes or affects its rights which prior to that time had been acquired and fixed by contract with the state under the act of 1862, and that in so far as the act of 1885 repealed or amended the act of 1862, such repeal or amendment was void as against the complainant's rights, as impairing the obligation of a contract. The constitution of this state adopted in 1849 provided in article 4, § 31, that "corporations may be formed under general laws, but shall not be created by special act, except for municipal purposes. All general laws and special acts passed pursuant to this section may be altered from time to time, or repealed." Article 12, § 1, of the constitution adopted in 1879, provides: "Corporations may be formed under general laws, but shall not be created by special act. All laws now in force in this state concerning corporations, and all laws that may be hereafter passed pursuant to this section, may be altered from time to time, or repealed." This provision of the constitution of the state is, however, qualified by another provision of the same instrument adopted pursuant to a requirement of the constitution of the United States, providing that no law impairing the obligation of a contract shall ever be passed. Article 1, § 16, Const. Cal.; article 1, § 10, Const. U. S. There is also involved in this controversy the prohibition of paragraph 1 of the fourteenth amendment of the constitution of the United States, providing:

"Nor shall any state deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the · equal protection of the laws."

Have the provisions of the act of the legislature of March 12, 1885, impaired the obligations of any contract entered into by the complainant with the state under its incorporation under the act\ of May 14, 1862? And does the enforcement of the act of March 12, 1885, by the board of supervisors of Stanislaus county in the manner and under the circumstances disclosed by the evidence in this case, deprive the complainant of property without due process of law, or deny to it the equal protection of the laws? The act of May 14, 1862, provided that a canal company organized under its provisions should have the power: (1) To make rules and regulations for the management and preservation of its works not inconsistent with the laws of the state,

and for the use and distribution of the waters and the navigation of the canals. (2) To establish, collect, and receive rates, water rents, or tolls, which should be subject to regulation by the board of supervisors. (3) Such rates, rents, or tolls should not be so low as to yield less than $1\frac{1}{2}$ per cent. per month upon the capital actually invested. The act of March 12, 1885, regulating and controlling the sale, rental, and distribution of appropriated water in this state, provides that, after proper petition for regulation of water rates, the board of supervisors shall—(1) Estimate the value of all property actually used and useful to the appropriation and furnishing of such water. (2) Estimate the annual reasonable expenses of each person or corporation whose franchise shall be controlled, including repairs, management, and operating of such works. (3) The board may establish different rates for different uses, such as mining, irrigating, domestic, etc., but such rates, as to each class, shall be equal and uniform. (4) Adjust the net annual receipts and profits so that they may be not less than 6 nor more than 18 per cent. upon the value of property actually used and useful. (5) But in such estimation of net receipts and profits the cost of extensions, enlargements, or other permanent improvements shall not be included as part of expenses, but, when completed, shall be included in the present cost and cash value of such work. (6) In fixing said rates within limits aforesaid, said board may take into estimation any and all other facts, circumstances, and conditions pertinent thereto, to the end and purpose that such rates shall be equal, reasonable, and just, both to such corporations and to said inhabitants. The act of 1862 requires the board of supervisors to regulate water rates and tolls of corporations organized under the provisions of the act upon the basis of the "capital actually invested." The act of 1885 requires the board of supervisors to adjust the net annual receipts and profits "upon the value of all the property actually used and useful to the appropriation and furnishing of such water." It will be assumed that this last provision means the cash value of the property at the time the estimate is made by the board of supervisors. As thus construed, these provisions of the two statutes might in some instances produce the same results, but it is clear that with respect to corporations organized under the provisions of the latter act the purpose of the legislature was to furnish a better-defined, if not a different, basis from that provided in the act of 1862 for estimating the capital or value of the property of the corporation with respect to which rates were to be fixed. What effect has this statute upon corporations organized, as was the complainant, under the prior act? The act of 1862 is not in terms repealed, but the act of 1885 provides that all water appropriated for irrigation, sale, rental, or distribution in the state is a public use, and the right to collect rates or compensation for use of such water is a franchise; and, except when furnished to a city, city and county, or town, or the inhabitants thereof, must be regulated and controlled by the several boards of supervisors of the counties in the manner provided by the act. But how regulated and controlled? Must the adjustment of rates for the purpose of determining the net annual receipts and profits which the corporation may retain as income be limited absolutely to the value of the property actually

used and useful to the appropriation and furnishing of such water? In other words, assuming as we have, that this provision of the statute means the value of the property at the time the rates are fixed by the board, is this present cash value of the property the limit of the power of the board in determining the basis with respect to which rates shall be regulated and controlled? Manifestly not, for the statute provides further that the board, in fixing rates, may take into estimation any and all other facts, circumstances, and conditions pertinent thereto, to the end and purpose that such values shall be equal, reasonable, and just, both to such corporations and to the inhabitants. Why, then, is it not within the power of the board in fixing rates to consider the capital·actually invested in the property of the corporation, subject only to the limitation that such property is actually used and useful to the appropriation and furnishing of water? It is certainly a most important fact, recognized by constitutional and statute law in determining whether any given rate is equal, reasonable, and just as between the corporation and the rate-paying public, and there appears to be no answer to the claim of the complainant that it is entitled to such consideration, based not only upon reason and justice, but upon a legal right created by a contract under a prior statute. · To hold that under this statute the capital actually invested in the property of the corporation under the act of 1862 may be entirely disregarded by the board of supervisors in fixing water rates under the act of 1885, would be to encounter the constitutional provision that no law impairing the obligation of a contract should be passed, and this interpretation of the statute would be subject to the further objection that the state cannot deprive the complainant of its property without due process of law, or deny to it the equal protection of the laws. These constitutional provisions cannot be held subordinate to the constitutional power conferred upon the state legislature to alter, amend, or repeal general laws concerning corporations. As said by the supreme court of the United States in Shields v. Ohio, 95 U. S. 319, 324, 24 L. Ed. 357:

"The power of alteration and amendment is not without limit. The alterations must be reasonable. They must be made in good faith, and be consistent with the scope and object of the act of incorporation. Sheer oppression and wrong cannot be inflicted under the guise of amendment, or alteration. Beyond the sphere of the reserved powers the vested rights of property of corporations in such cases are surrounded by the same sanctions, and are as inviolable as in other cases." ·

It will not be necessary to refer to the long line of cases in the highest courts of the nation where these constitutional questions have been elaborately discussed, and the rights of property carefully defined, in controversies arising out of legislation affecting corporate rights. It will be sufficient for the present purpose to refer to the case of Hill v. Railroad Co. (C. C.) 41 Fed. 610, 616, where Judge Jackson, of the United States circuit court of Kentucky (afterwards a judge of the supreme court of the United States), stated the law of these cases in very clear terms. He said:

"The principle of these and other decisions upon the subject of amending or repealing charters under a reservation of power so to do is that the legislature may change or modify the privileges and franchises which the state

has granted to the corporation, and which concern the interests of the public; but dealing with what it has bestowed, either by way of withdrawal or of alteration, the state may not go further, and so legislate as to disturb, affect, or impair rights either of the corporation or of its shareholders, previously acquired, while the corporate functions were being lawfully exercised. All rights thus acquired, of whatever character, are surrounded and protected by constitutional sanctions and guaranties higher and superior to the legislative power of amendment or repeal."

Applying this constitutional principle to the provisions of the act of 1885, it must be held that it was not intended by the legislature to repeal the act of 1862, certainly not with respect to corporations organized under the prior act; and that with respect to such corporations the two acts were to be construed together. What, then, was the duty of the board of supervisors in this case? Money paid by stockholders to the capital of a corporation is unquestionably property of the corporation. Whether this capital or the property acquired by it has been actually invested and used or made useful in the operation of the franchise of the corporation, is a question of fact to be determined upon proper investigation. It follows that it was the duty of the board of supervisors to ascertain the amount of capital actually invested in the corporation—that is to say, the amount of capital actually paid in and invested in constructing the canals and acquiring other property used and made useful in supplying water to the customers of the corporation in Stanislaus county, and this fact should have been considered by the board in fixing water rates which the complainant was entitled to charge—under the statute. It appears from the evidence that on March 10, 1896, 25 persons, claiming to be inhabitants and taxpayers of the county of Stanislaus, filed a petition with the board of supervisors of that county, praying the board to regulate and control the rates and compensation to be collected by the complainant for the sale, rental, or distribution of the appropriated water of said company to the inhabitants of said county. After notice and a hearing upon said petition, the board, on June 26, 1896, made the following order:

"Pursuant to an act of the legislature of the state of California entitled 'An act to regulate and control the sale, rental, and distribution of appropriated water in this state, other than in any city, city and county, or town therein, and to secure the rights of way for the conveyance of such water to the places of use,' approved March 12, 1885 (St. 1885, p. 95), the board regularly proceeds to the hearing of the petition of C. C. Eastin et als., presented herein, praying for the regulation of the rates and compensation to be collected by the San Joaquin and Kings River Canal & Irrigation Company for the sale, rental, or distribution of its appropriated water to any of the inhabitants of Stanislaus county, under and pursuant to said act, and evidence having been introduced by and on behalf of the petitioners herein and by and on behalf of the said San Joaquin and Kings River Canal & Irrigation Company; and, the same being closed, and the matter submitted to the board for its consideration and decision, and the board being fully advised in the premises, the board does hereby estimate, as near as may be, the value of the canal, ditches, flumes, water chutes, and all other property actually used and useful to the appropriation of the appropriated waters of said company, belonging to and possessed by it, at the sum of $337,000."

The remainder of the order is immaterial to the present controversy. This estimate of the value of complainant's property appears to have been based mainly upon a report by R. H. Goodwin, consulting

engineer, and E. D. Grove, deputy county surveyor, experts employed by the board, and whose report was made to the board under date of June 10, 1896. This report contained, among other things, the following estimate of cost of construction of complainant's canal:

"The following is an estimated cost of construction of the above-mentioned canal, taking in consideration the different widths, cross-sections, grades, materials, and appurtenances based on the prices of materials, supplies, and labor of the present date:

| | |
|---|---:|
| Earth excavation, 2,966,125 yards, at 6½ c. | $192,798 10 |
| Lumber in head, regulating, distributing, waste, and inlet gates, boxes, bridges, etc., 1,689,410 feet B. M., in place. | 55,536 50 |
| Six station buildings | 4,000 00 |
| Telephone line 70 miles | 4,900 00 |
| Engineering, superintendence, offices of company, stationery and printing, law expenses, and other incidentals. | 25,723 40 |
| Right of way, first 30 miles, 900 acres, at $3. | 2,700 00 |
| Right of way, balance distance, 1,068 acres, at $25. | 26,700 00 |
| Total cost | $312,358 00 |

"We place the present cash value of the above-mentioned canal and works at $251,000.00."

To this estimated cost of construction at that date, to wit, $312,-358, the board added the sum of $24,642, making the total of $337,000. It nowhere appears that this addition of $24,642 to the estimated cost of construction at that date as made by the experts employed by the board had any relation to the amount of capital actually invested in the corporation by the shareholders. On the contrary, the testimony indicates that this element in the valuation of the property was entirely ignored. Upon this valuation of $337,000 the board fixed the following rates: For irrigating alfalfa, all perennial grasses, and all cereals, $1.50 per acre per annum; for irrigating trees and vines, $2 per acre per annum; for irrigating gardens, $3.50 per acre per annum; for water for sheep, hogs, or goats, $6 per 1,000 per month, and at the same rate for a less number; for water for horses, cattle, mules, and other live stock, $25 per 1,000 per month, and at the same rate for a less number. Prior to this order of the board of supervisors the rates which had been fixed by the complainant and charged to consumers of water in the counties of Fresno, Merced, and Stanislaus, were as follows: For irrigating alfalfa, $2.50 per acre per annum; for irrigating cereals, $2 per acre per annum; for irrigating trees and vines, $2.50 per acre per annum; for irrigating gardens, $5 per acre per annum; for water for sheep, hogs, or goats, $10 per 1,000 per month, and at the same rate for a less number; for water for horses, cattle, mules, and other live stock, $40 per 1,000 per month, and at the same rate for a less number. For the purposes of this case it is conceded by the complainant that the rates per acre per annum for irrigating alfalfa, $2.50 per acre per annum, and cereals, $2 per acre per annum, are the only rates that are material to be considered in this case, for the reason that the water supplied to consumers at the other rates constitutes but a very insignificant portion of the business of the complainant. The damage to the complainant arises out of the fact that, but for this order of the board of supervisors of June 26, 1896, fixing the rate that complainant might charge

for water supplied to consumers in Stanislaus county for irrigating alfalfa and perennial grasses and cereals $1.50 per acre per annum, complainant would have continued to charge such consumers for irrigating alfalfa $2.50 per acre per annum, and for irrigating cereals $2 per acre per annum. The evidence shows that the rate fixed by the board of supervisors reduces the income of the company considerably below 6 per cent. upon the capital actually invested in the property of the corporation, and, if a corresponding reduction were made in Fresno and Merced counties, its income would, under the most favorable conditions, be reduced to less than 5 per cent. per annum on the value of the property as estimated by the board of supervisors. Is this valuation of complainant's property correct?

It appears from the evidence that the canal owned and maintained by the complainant is on the west side of the San Joaquin river; that this canal has its head at the junction of the San Joaquin river with Fresno Slough, in Fresno county, and runs down the west side of the San Joaquin valley through the counties of Fresno and Merced into the county of Stanislaus. The total length of the canal is 120¾ miles, of which 42.9 miles are in the county of Fresno, 66.15 in the county of Merced, and 11.7 miles in the county of Stanislaus. A branch of the main canal in Fresno and Merced counties, called the "Dos Palos Branch," is 23 miles in length, but, as this branch is not used to supply water in the county of Stanislaus, it may be disregarded in this controversy. The complainant is a corporation organized in September, 1871, under the laws of the state of California. The capital stock of the corporation is divided into 100,000 shares of the par value of $100. Upon 85,000 shares of this stock calls amounting to $10.15 per share were made, and $862,750 paid in. The remaining 15,000 shares were involved in the transaction of purchase under which they were issued nonassessable until calls to the amount of $7.50 per share had been paid upon the other stock. The calls upon this stock amounted to $2.65 per share, and $39,750 paid in. There was also an additional amount of $1.45 per share, on 8,500 shares of this stock paid in, amounting to $12,325; making a total of $914,825 paid by the shareholders upon the stock of the company. The complainant commenced operations in 1871 by purchasing from another corporation known as the San Joaquin & Kings River Canal Company all the property, vested rights, surveys, and works acquired by that company since the date of its incorporation in 1866. The complainant proceeded with the work of constructing this canal. The date of its completion is a subject of controversy, but need not be determined. The claim of the defendants in this respect may be accepted for the purposes of this case. It appears that in the course of construction the complainant distributed water for irrigating purposes to consumers along the line of the canal, and derived an income from that source up to the year 1886 amounting to $60,349.20. This money was not, however, distributed in dividends, but was used by the company in construction. From 1886 to 1898 the net profits of the corporation were $158,112.58, and of this amount $134,893.38 was used by the company in the work of construction, making the total amount contributed to the capital of the corporation from 1871 to 1898 the sum

of $1,110,067.58. There is, however, to be deducted from this amoun:. the sum of $60,000 realized by the corporation from the sale of a. tract of land which it owned. This sum was distributed to the stock-holders as a dividend, and must be deducted from the capital stock of the corporation, leaving the net amount of capital the sum of $1,050,067.58. The books of account and vouchers of the complainant during its entire existence, and the books of account of the former company, were produced as evidence before the examiner. A statement of the cost of construction of the canal and irrigation works up to November 25, 1895, as shown by these books, was prepared by the complainant, and introduced in evidence as "Exhibit 2." It is as follows:

Paid San Joaquin & Kings River Canal Company, cost of works to date of purchase........................................ $ 119,335 29
Paid John Bensley et al. in stock (15,000 shares at $7.50) for re-mainder of property of old company........................ 112,500 00
Paid by this company for construction performed by itself from date of purchase from old company to February 28, 1885..... 739,277 84
Paid by this company for construction from March 1, 1885, to November 25, 1895............................................ 84,685 51
                                                                           ─────────────
Total ................................................................. $1,055,798 64

This exhibit was subject to the objection that complainant's books prior to 1886 did not distinguish between the cost of maintenance and the cost of construction. The complainant accordingly made a second statement, in which the cost of maintenance was excluded. This revised statement was introduced as "Exhibit 12," and was headed:

"Statement of cost of construction of San Joaquin Canal to December 31, 1873, and betterments since constructed therein, with cost of construction, of parallels and extensions. This includes only items actually charged to construction, and which can be identified from the accounts as properly belonging thereto, and does not include any charges for construction which cannot be positively so identified from the accounts alone."

The items of cost were given in greater detail in this statement than in Exhibit 2, and amount to $798,429.61. It is evident that this last statement shows the actual cost of complainant's canal and works more accurately than the preceding one, but it is not necessary for the court to determine that it is in fact correct, or that it shows the actual value of the property used and useful in supplying water to the inhabitants of Stanislaus county. It is not the duty of the court to estimate the value of complainant's property or fix the water rates it may charge; but this statement, as well as the one relating to the amount of capital paid into the corporation by the stockholders, can only be considered, with the other testimony in the case on behalf of complainant, as evidence tending to establish the fact that when the board of supervisors estimated the value of the canal, ditches, flumes, water chutes, and all other property belonging to the complainant, and actually used and useful to the appropriation of water by the company, no consideration was given by the board to the evidence showing the amount of capital actually paid into the corporation or the actual, reasonable, and proper cost of the works. The court finds that the evidence in the case does establish the fact that the board failed to-

perform its duty in this respect. It follows that the value of complainant's property made by the board of supervisors and the water rates fixed by the board with respect to such estimate did deprive the complainant of property without due process of law, and denied to it the equal protection of the laws.

The question as to the amount of income which the complainant is entitled to receive on account of the capital actually invested remains to be considered. The act of 1862 provides that the board of supervisors should not reduce the water rates, rents, or tolls "so low as to yield to the stockholders less than one and one-half per cent. per month upon the capital actually invested." Prior to June 26, 1896, and for a period of more than 25 years, the complainant fixed its own rates for water supplied to consumers, but at no time did it fix rates so high as to yield 1½ per cent. per month upon any estimate of the value of the property or capital actually invested. This, then, was a right under the statute which the complainant never claimed and never reduced to possession, either before or after the act of 1885. In the Sinking Fund Cases, 99 U. S. 700, 720, 25 L. Ed. 496, Mr Chief Justice Waite, speaking of the power of congress to make such alterations and amendments of the charter as come within the just scope of legislative power, used language appropriate to this question. He said:

"That this power has a limit, no one can doubt. All agree that it cannot be used to take away property already acquired under the operation of the charter, or to deprive corporations of the fruits actually reduced to possession of contracts lawfully made."

This statement was not necessary to the determination of the question before the court, but it appears to be sound in principle. The qualification that a statutory right embraced in the charter of a corporation must be reduced to possession to secure the constitutional protection against alteration and repeal is unquestionably a law of the grant. It is perhaps true that there might be cases where a corporation of the character of the complainant, having invested capital in good faith, would not be held to have waived its ultimate right to the limit of income provided in its charter by the acceptance of a smaller income during the progress of construction, or perhaps even longer, until its system of irrigation had brought prospective tracts of land under successful cultivation. But the evidence in this case does not justify the complainant in making that claim. It had waived its right to an income of 1½ per cent. per month by not making rates to secure that income during any part of its term of existence prior to the passage of the act of 1885, and this act providing that the net annual receipts as adjusted by the board of supervisors should not be less than 6 nor more than 18 per cent. per annum, is therefore properly applicable to the regulation of complainant's rates.

Let a decree be entered in favor of the complainant in accordance with this opinion.